Filed 10/17/23  In re R.J. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.J. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL J.,<br><br>Defendant and Appellant. | F086137<br><br>(Super. Ct. Nos. JD144125 & JD144126)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from orders of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Alexandria M. Ottoman, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Smith, Acting P. J., Snauffer, J. and DeSantos, J.

Dependency jurisdiction was taken over Michael J. (father)'s two daughters, R.J. and M.J., as well as their older half sibling, K.H. (mother's child from a previous relationship), pursuant to Welfare and Institutions Code,[1] section 300, subdivisions (b) (failure to protect) and (d) (sexual abuse). The juvenile court found true allegations, among others, that father had sexually abused K.H. The juvenile court ordered the children removed from the parents' custody and found the bypass provision set forth in section 361.5, subdivision (b)(6)—that the children or their sibling had been adjudicated a dependent under section 300 due to severe sexual abuse by the parent, and providing reunification services to the parent would not benefit the children—applied and declined to order family reunification services to father.

Father appeals from the dispositional findings and orders, contending that the juvenile court erred by bypassing father for services, specifically that the order was not supported by the evidence.

Finding no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In December 2022, law enforcement was called out to an elementary school due to a report that K.H., then 12 years old, was threatening to kill other students. K.H. reported to law enforcement that she also wanted to kill father and his mother, her stepgrandmother, as she had witnessed father perpetrating domestic violence against mother, and her stepgrandmother was not a good person. She further disclosed she had thought about killing herself in the past. Law enforcement determined that K.H. posed a danger to herself and others and placed a section 5150 hold on her. As the officer was filling out the form, K.H. told the officer she forgot to tell him something—she said she did not want to get in trouble for saying anything, but father had been touching her

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2.

private parts for the past year.  K.H. stated she had told mother, but mother did not do anything about it.

K.H. requested to speak to a female detective and told her that father had touched her vagina and breasts with his bare hands.  This would occur late at night when mother was not home.  K.H. explained mother would often be gone for days at a time.  She denied that father penetrated her vagina with his penis or fingers but rubbed her vagina "many times."  She believed he had touched her about 17 times in total.  K.H. later provided more details—that father attempted to rape her and she bit him to defend herself and that he forced her to orally copulate him on three separate occasions.  K.H. stated that father and mother's children, R.J., age five, and M.J., age four, also lived in the home.  Based on K.H.'s disclosures, law enforcement took R.J. and M.J. into protective custody and transferred custody to the department.

Father was interviewed by law enforcement and denied any sexual abuse.  Mother was also interviewed and reported father was physically abusive toward her in front of the children.  She admitted she would leave the home for days on end because father forced her to or because she felt like it was the only way to escape him; he would not allow her to take the children with her.  She stated K.H. had told her a few months ago that father had touched her buttocks but that it appeared to be an accident.  Law enforcement informed the department they would be pursuing criminal charges against father in connection with K.H.'s disclosures.

The investigating social worker spoke to K.H. in the psychiatric facility where she was being evaluated, and K.H. relayed similar information to the investigating social worker as she did to law enforcement.  She added that on one occasion father "put his privates into her privates," and "it felt bad and painful."

R.J. reported to the social worker that her parents fought but denied seeing them hit each other.  R.J. reported feeling safe with her parents.  She had told the detective that

3.

father was "the best" and that he was nice to her. M.J. also reported to the social worker that she felt safe with her parents.

When the social worker spoke to mother, mother reported that when K.H. disclosed that father had touched her butt, she asked father about it, and he denied it, and she thereafter "kept a close eye" on K.H. and never saw anything that would cause suspicion. Mother further reported that father frequently hit her, leaving marks, but she had never reported it to law enforcement. She was not present when the children were taken into protective custody because she was out of the home to avoid fighting with father. She further expressed that she had a history with methamphetamine and drank alcohol daily to "take the edge off." In addition, she had been diagnosed with manic depressive disorder and anxiety but was not taking medication to treat the conditions.

The department filed petitions on behalf of R.J. and M.J. It was alleged they came within the juvenile court's jurisdiction under section 300, subdivisions (b) and (d). Under section 300, subdivision (b), it was specifically alleged that they had suffered or there was a substantial risk they would suffer serious physical harm as a result of the parents' failure or inability to adequately protect the children from exposure to domestic violence. It was further alleged they were at risk because mother had failed to protect them due to substance abuse and untreated mental health issues. Under section 300, subdivision (d), it was specifically alleged that the children had been sexually abused or there was a substantial risk they would be sexually abused by father as he had sexually abused their half sibling, K.H., by touching her breasts and vaginal area several times, placing his penis into her vagina, and having her orally copulate him.

At the continued detention hearing conducted on December 19, 2022, father was elevated to presumed father of R.J. and M.J. The juvenile court ordered the children detained from the parents.

The jurisdiction hearing was conducted on February 14, 2023. Father contested jurisdiction and testified on his behalf. He testified he was never alone with K.H. and

4.

denied all sexual abuse or sexual contact allegations. He further testified K.H. had lied before; he gave an example of her stating her stomach hurt and when she was taken to the hospital, they found nothing wrong with her.

In ruling, the juvenile court noted that K.H.'s statements had been consistent and that both she and mother reported K.H. had disclosed inappropriate behavior to mother previously. The juvenile court found father's testimony that he was never alone with K.H. was not credible as it conflicted with mother's previous statements that she would leave the home. The juvenile court noted it "believe[d] there is more than sufficient evidence to find the allegations true." The juvenile court found the children were described by section 300, subdivisions (b) and (d). The matter was continued for disposition.

The department's disposition report dated March 2, 2023, summarized some visits between the parents and the children. The parents were generally reported to be appropriate, and the visits appeared to go well. The department was recommending father not be offered family reunification services because the bypass provision of section 361.5, subdivision (b)(6) applied, as there was clear and convincing evidence the children came within the juvenile court's jurisdiction as the result of severe sexual abuse of the children's half sibling and that it would not benefit the children to pursue reunification services with father.

A supplemental disposition report dated April 13, 2023, detailed two more visits between just father and the children. It was reported that father brought snacks, and he and the children watched videos, talked, and played. The report indicated that the social worker reviewed father's initial case plan with him in February 2023, which included domestic violence as a perpetrator and sexual abuse as a perpetrator services. Father stated he was willing to sign up for domestic violence but was not willing to sign up for sexual abuse services because he did not do anything. In March 2023, the social worker reviewed father's initial case plan with him again, and father stated he was not going to

sign up for classes at that time. He had gone to a few parenting classes and was planning to sign up for domestic violence counseling, but father asserted the domestic violence incident was two years ago and there was no current domestic violence. He asserted K.H. made up the sexual abuse allegations, broke down crying, and stated that he loved his children.

The disposition hearing was conducted on April 14, 2023. Father presented no evidence; his counsel stated he "does object to the recommendations in the report. He still denies the allegations, and he does love his children very much. So he wishes he did have that opportunity to reunify, but other than that we are submitting."

The juvenile court ordered the children removed from the physical custody of the parents, ordered reunification services for mother, but not father, as it found the bypass provision of section 361.5, subdivision (b)(6) applied.

## DISCUSSION

Father contends the juvenile court's determination that section 361.5, subdivision (b)(6) applied was not supported by the evidence. We disagree.

A court is generally required to order reunification services for a parent " 'whenever a child is removed' " from that parent's custody unless an enumerated statutory exception or "bypass" provision applies. (*In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1271.) "Consonant with the general presumption in favor of mandatory reunification services, the bypass provisions are 'narrow in scope' and reach situations where ' "the likelihood of reunification" ' is ' "so slim" ' due to a parent's past failures that 'expend[ing]' the [d]epartment's ' "scarce" ' resources on reunification services is likely to be 'fruitless,' or when 'attempts to facilitate reunification' would otherwise not 'serve and protect the child's interest.' " (*Ibid.*)

As pertinent here, section 361.5, subdivision (b)(6)(A) provides that reunification services need not be provided to a parent when the court finds by clear and convincing evidence "[t]hat the child has been adjudicated a dependent pursuant to any subdivision

6.

of Section 300 as a result of severe sexual abuse … to the child, a sibling, or a half sibling by a parent or guardian … and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian." For the purpose of the subdivision, "[a] finding of severe sexual abuse … may be based on, but is not limited to, sexual intercourse, or stimulation involving genital-genital, oral-genital, anal-genital, or oral-anal contact, whether between the parent or guardian and the child or a sibling or half sibling of the child, or between the child or a sibling or half sibling of the child and another person or animal with the actual or implied consent of the parent or guardian; or the penetration or manipulation of the child's, sibling's, or half sibling's genital organs or rectum by any animate or inanimate object for the sexual gratification of the parent or guardian, or for the sexual gratification of another person with the actual or implied consent of the parent or guardian." (§ 361.5, subd. (b)(6)(B).)

In determining whether reunification services will benefit the child pursuant to section 361.5, subdivision (b)(6), the court shall consider any information it deems relevant, including the following factors: "(1) [t]he specific act or omission comprising the severe sexual abuse … inflicted on the child or the child's sibling or half sibling"; "(2) [t]he circumstances under which the abuse or harm was inflicted on the child or the child's sibling or half sibling"; "(3) [t]he severity of the emotional trauma suffered by the child or the child's sibling or half sibling"; "(4) [a]ny history of abuse of other children by the offending parent or guardian"; "(5) [t]he likelihood that the child may be safely returned to the care of the offending parent or guardian within 12 months with no continuing supervision"; and "(6) [w]hether or not the child desires to be reunified with the offending parent or guardian." (§ 361.5, subd. (i).)

The court shall not order reunification for a parent or guardian described in section 361.5, subdivision (b)(6) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child. (§ 361.5, subd. (c)(2).)

Once the department carries its burden to show a bypass provision such as section 361.5, subdivision (b)(6) applies, " ' "the general rule favoring reunification is replaced by a legislative assumption that offering services would be an unwise use of governmental resources." ' " (*In re William B.* (2008) 163 Cal.App.4th 1220, 1227.)  The burden then shifts from the department to the parent "to change that assumption and show that reunification would serve the best interests of the child." (*Ibid*.)

We review the juvenile court's initial determination that section 361.5, subdivision (b)(6) applies for substantial evidence.  (*Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1121–1122.)  We do not make credibility determinations or reweigh the evidence but " 'review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings.' " (*Ibid*.)  We bear in mind the clear and convincing standard in doing so.  (*Id*. at p. 1122.)  We review the juvenile court's ultimate determination as to whether reunification services are in the child's best interests for abuse of discretion.  (*In re A.E.* (2019) 38 Cal.App.5th 1124, 1140–1141.)

As a threshold matter, we address the department's contention that father forfeited any claim of error by submitting "on the social worker's recommendations" contained in the dispositional reports.  First, we reject the department's characterization of father's position as submitting the matter on the department's recommendations.  Father clearly objected to the recommendation of denying him reunification services.  Though he did not offer any further argument or evidence and "submitted" the matter, we interpret father's counsel's comments as submitting the matter on the state of the evidence.  Now, on appeal, father contends the evidence on the record at the time of the disposition hearing was insufficient to support the juvenile court's determination that father would not receive reunification services.  While the general principle of forfeiture prohibits parties from addressing on appeal issues not raised at trial, "the argument that a judgment is not supported by substantial evidence is an 'obvious exception to the rule.' " (*In re*

*P.C.* (2006) 137 Cal.App.4th 279, 287–288.)  We therefore decline to find that father has forfeited the claims he makes on appeal.

Turning to father's substantive claims, we conclude the juvenile court's initial determination that section 361.5, subdivision (b)(6) applied was supported by substantial evidence.  It does not appear to be disputed that the children were adjudged dependents of the court in part due to sexual abuse perpetrated on their half sibling.  The juvenile court could reasonably conclude the sexual abuse was "severe" within the meaning of the statute as K.H.'s allegations included acts of oral copulation and sexual intercourse, as well as multiple accounts of rubbing her vagina with father's bare hands.

Further, the juvenile court could reasonably conclude the children would not benefit from reunification services.[2]  The acts and circumstances of the sexual abuse of K.H. were egregious in that they were repeated and took place in the home when mother was not present.  The evidence also supports that mother was often not present in the home because of father's own actions of perpetrating violence against her.  It appears from the record the sexual abuse at least in part caused substantial emotional trauma to K.H., who was having violent ideations towards peers as well as father and had to be placed on a section 5150 hold at the outset of the case.  The likelihood of a safe return of the children to father within 12 months was low given father's insistence of his innocence

---

[2]     Though father does not raise the issue, we note the juvenile court did not state the basis for its section 361.5, subdivision (b)(6) findings on the record, as required by section 361.5, subdivision (k), which provides, "[t]he court shall read into the record the basis for a finding of severe sexual abuse … under paragraph (6) of subdivision (b), and shall also specify the factual findings used to determine that the provision of reunification services to the offending parent or guardian would not benefit the child."

We, however, "will infer a necessary finding provided the implicit finding is supported by substantial evidence." (*In re S.G.* (2003) 112 Cal.App.4th 1254, 1260 [declining to reverse juvenile court's § 361.5, subd. (b)(6) bypass determination for failure to state factual basis on the record because the record contained substantial evidence to infer necessary findings].)

and refusal to participate in sexual abuse classes and failure to promptly participate in other services. There is no direct evidence on the record regarding the children's desire to reunify with father, likely due to their young ages. While it does appear the children enjoyed visiting with father and did not report feeling unsafe with him, when weighed against the other factors, the juvenile court could still reasonably conclude the children would not benefit from father receiving reunification services.

Finally, we conclude the juvenile court's ultimate determination that reunification services were not in the children's best interests was not an abuse of discretion. Once the department carried its burden to prove section 361.5, subdivision (b)(6) applied, father bore the burden to make the showing that reunification services were nonetheless in the children's best interests but offered no substantive argument or any evidence in an attempt to support such a claim. Given the juvenile court's finding that section 361.5, subdivision (b)(6) applied, which we conclude was supported by substantial evidence, and the fact that father presented no additional considerations to the court, the court was essentially required to deny father reunification services under section 361.5, subdivision (c)(2); we cannot say there was any abuse of discretion.

For these reasons, we conclude the juvenile court did not err by denying father reunification services.

## DISPOSITION

The juvenile court's April 17, 2023 dispositional findings and orders are affirmed.